# EXHIBIT A



# MASTER SERVICES AGREEMENT

This **Master Services Agreement** (the "Agreement") is made this 28th day of March 2019 (the "Effective Date"), by and between AnovoRx, a corporation organized and existing under the laws of the State of Tennessee and having a place of business at 1710 N Shelby Oaks Dr, Suite 2, Memphis, TN, 38134 ("Client") and **4th SOURCE, LLC.**, a Delaware Corporation having a principal place of business in Tampa, Florida ("4th SOURCE"). Client and 4th SOURCE shall be referred to collectively as the "Parties" or singularly as "Party".

## WITNESSETH:

WHEREAS, Client and 4th SOURCE desire to enter into this Agreement in order to set out the terms and conditions under which 4th SOURCE shall provide contract information technology services;

NOW, THEREFORE, in consideration of the premises and of the respective agreements and undertakings hereinafter set forth, the parties hereto do hereby agree as follows:

**I. SERVICES AND SCOPE OF WORK**

From time to time Client may request 4th SOURCE to provide certain information technology services (collectively "Services"), which shall be set forth in a statement of work in the form of Exhibit "A" (the "SOW"). The SOW will describe the Services to be performed, the planned start date, the projected end date and other relevant dates if any ("Services Schedule"), the performance and/or testing period for acceptance of services ("Warranty of Services"), Client's obligations, requirements and other understood facts ("Dependencies"), the identifiable work product resulting from the Services ("Deliverables"), the fixed price or time & materials rates and payment schedule ("Fees") and any other terms applicable to the specific SOW not addressed by this Agreement ("Special Terms"). Each SOW together with the terms of this Master Services Agreement constitutes a separate contract that will be effective upon execution by authorized representatives of 4th SOURCE and Client. In the event of a conflict between the terms of the Agreement and any SOW, the SOW will control.

**II. TERM**

This Agreement shall commence on the Effective Date and shall continue in full force and effect thereafter unless and until terminated in accordance with the provisions of this Agreement.

**III. ACCEPTANCE OF DELIVERABLES**

A. <u>Acceptance Testing</u>. Each Deliverable shall be provided in accordance with the specific SOW and shall be subject to acceptance testing by Client. Client shall have ten (10) days from the receipt of Deliverable to conduct tests as it considers appropriate in order to determine whether the Deliverable is materially in accordance with the specifications agreed to by the Parties on the SOW. In the event that any Deliverable is not functional or is otherwise not in compliance with the specifications set out in the applicable SOW, Client shall notify 4th SOURCE in writing within ten (10) days of its receipt. Client's failure to so notify 4th SOURCE shall deem the Deliverables accepted by Client, and 4th SOURCE shall have no further obligations with regards to the Deliverables. Changes to Acceptance Testing



language in an SOW shall override the original agreed upon MSA language.

B. <u>Correction</u>. To the extent that Client gives notice to 4th SOURCE as set out in Section III A. above, Client shall cooperate with 4th SOURCE in identifying in what respects the Deliverable has failed and allow 4th SOURCE the opportunity to fix such failures pursuant to the terms of this Section III. 4th SOURCE shall promptly correct any actual deficiencies, and to the extent reasonably possible, within ten (10) days of Client's written notice thereof.

C. <u>Inability to Correct</u>. To the extent that Client gives notice to 4th SOURCE as set out in Section III A. above, if 4th SOURCE is unable to correct any actual deficiency in the Deliverables, after Client has permitted 4th SOURCE reasonable opportunity to fix the failures, Client may (i) terminate this Agreement without any further obligation or liability; or (ii) require 4th SOURCE to continue to attempt to correct the deficiencies, reserving the right to terminate as aforesaid at any time.

## IV. FEES AND EXPENSES

A. <u>Fees</u>. The Fees payable by Client in respect of the services performed under any SOW are as specifically set out in such SOW. For Time and Materials engagements, Fees for hours worked that exceeds forty (40) hours per calendar week will be billed at one-hundred percent (100%) of the hourly rate set out in the SOW. For a fixed fee engagement, the agreed upon fixed rate would apply.

B. <u>Expenses</u>. In addition to the Fees identified in each SOW, 4th SOURCE will be reimbursed for the following: (a) for Client pre-approved travel, reasonable out of pocket travel and living expenses actually incurred by 4th SOURCE including, but not limited to airfare, mileage, lodging, auto rental, meals and incidentals; and (b) other expenses that the parties may agree to in a SOW.

C. <u>Invoices</u>. Unless otherwise indicated in a SOW, invoices for Services and Expenses will be rendered monthly and will be payable in US Dollars (USD $). Payment will be due no later than thirty (30) days following receipt of an invoice by Client. If payment of any invoice has not been received after its required due date thereunder, unpaid amounts may accrue interest at the lesser of (i) rate of eighteen percent (18%) per annum, or (ii) the maximum rate allowed under applicable law. Additionally, to the extent that collection of any unpaid invoice is placed with an attorney at law, 4th SOURCE may be entitled to the recovery of reasonable attorney's fees.

D. <u>Annual Rate Increases:</u> Client acknowledges that 4th SOURCE may increase Fees for Services specified in an SOW by 3% per annum during the term of the Agreement.

E. <u>Staff Promotions:</u> Client acknowledges that 4th SOURCE resource may be promoted while providing Service under an SOW during the term of this Agreement. 4th SOURCE will notify Client in writing of the effective date of the promotion and new billing rate during the term of the SOW. The new billing rate will take effect in the next billing period that starts thirty (30) days after such notification.

F. <u>Project Management</u>: Both parties shall provide a project manager to ensure Services are successfully completed as described in the SOW. Unless specifically specified in an SOW, the 4th SOURCE project manager will be a billable resource under the SOW.

## V. TAXES

A. <u>Taxes.</u> The fees and expenses for Services do not include taxes. If 4th SOURCE is required to pay any federal, state, country or local taxes based on the Services provided under this Agreement, the taxes shall be billed to and



paid by Client. The foregoing shall not apply to taxes based on 4th SOURCE's income. Invoices may be amended to reflect tax charges, or Client may pay taxing party directly, as appropriate.

## VI. RIGHTS TO WORK PRODUCT & ASSIGNMENT

A. <u>Work Product</u>. All software, hardware, programs, source code, object code, developments, designs, processes, technical information (whether in human or machine-readable form), inventions (whether or not patentable), ideas, improvements, documentation, works of authorship, mask works, company lists, and all other work product of any type or nature are referred to as "Work Product" in this Agreement. All Work Product designed, created, developed, conceived, and/or fixed in a tangible medium by 4th SOURCE (or its employees or subcontractors) for Client under a SOW shall be considered "work made for hire," and is the exclusive property of Client.

B. <u>Assignment</u>. 4th SOURCE hereby permanently assigns to Client, royalty free and without reservation, any and all rights, copyrights and other proprietary interests in such Work Product, including, without limitation, all rights of attribution and integrity, the right to prepare derivative works and exploit the Work Product to Client's full commercial advantage, and all rights to any applications for letters of patent or copyright registration covering any such Work Product.

## VII. WARRANTIES; ADDITIONAL COVENANTS

A. <u>By 4th SOURCE</u>. 4th SOURCE warrants that: (a) 4th SOURCE has full rights and authority to execute, deliver and perform its obligations under this Agreement; (b) each of the 4th SOURCE personnel assigned to perform Services under this Agreement shall have the proper skill, training and background so as to be able to perform in a manner consistent with professional standards and practices; (c) all Services will be performed in accordance with this Agreement and applicable SOWs, including any specifications, performance standards, or service levels contained therein; (d) no Deliverable provided hereunder, or process or methodology used in performing Services, infringes or shall infringe on any third party intellectual property right or contractual right; and (e) 4th SOURCE shall not include in any software Deliverables provided to Client hereunder any viruses, worms, time bombs, logic bombs, trap doors, Trojan horses, or similar malicious instructions, techniques, or devices capable of disrupting, disabling, damaging, or shutting down a computer system or software or hardware component thereof, or any code that is based upon any software, documentation or other material that is distributed as "free software", "open source software" or under a similar licensing or distribution model, including, but not limited to, the GNU General Public License (GPL), GNU Lesser General Public License (LGPL), Mozilla Public License (MPL), or any other license described by the Open Source Initiative as set forth on <u>www.opensource.org</u>.

B. <u>Limited Warranty by 4th SOURCE</u>. 4th SOURCE warrants for ninety (90) days from Delivery Date that each Deliverable will perform in all material respects the functions described in any specifications agreed to by the parties in the applicable SOW. After notice from Client within the warranty period, Contractor shall correct or provide a workaround for reproducible errors that cause a breach of the warranty in this Section, or if 4th SOURCE is unable to make the Deliverable operate as warranted within a reasonable time Client may terminate this Agreement without any further obligation or liability.

C. <u>By Client</u>. Client warrants that: (a) it has the full right, power, and authority to enter into this Agreement; and (b) it is the owner of, or has the right to authorize 4th SOURCE to utilize, such materials as it may provide to 4th SOURCE as may be necessary to perform the Services, and the use of such materials as authorized does not and will not infringe any existing copyright, violate the right of privacy, or constitute the invasion or infringement of any other intellectual or personal property right of any third person, firm, corporation, or other entity.

D. <u>Data Protection Requirements</u>. 4th SOURCE shall establish and maintain safety and facility procedures, data security procedures and other safeguards against the destruction, loss, unauthorized access, acquisition, use or



alteration of Client data in the possession of 4th SOURCE that are no less rigorous than the greater of (i) (those maintained by 4th SOURCE for similarly situated customers receiving services of a similar nature or (ii) those safeguards utilized by 4th SOURCE to protect its own similar data. Client will have the right to review and approve all such procedures (and any changes thereto) prior to implementation. If 4th SOURCE discovers or is notified of a breach or potential breach of security relating to Client data or the Services, 4th SOURCE shall (i) promptly notify Client of such breach or potential breach, (ii) investigate such breach or potential breach, (iii) remediate the effects of such breach or potential breach of security, and (iv) provide Client with such assurances as Client shall reasonably request that such breach or potential breach will not recur. In addition, 4th SOURCE shall promptly take such remedial action in respect of such breach as reasonably requested by Client.

E. <u>Compliance with Laws</u>.  Each party shall comply with all federal, state, provincial and local laws, statutes, ordinances, regulations, rules, executive orders, supervisory requirements, directives, circulars, opinions, interpretive letters and other official releases of or by any government, or any authority, department or agency thereof, including Data Privacy Laws, and laws applicable to federal, state, provincial and local tax laws (collectively, "Laws") applicable to its respective businesses and facilities ("General Laws"). Without limiting the generality of the preceding sentence, in addition to General Laws, 4th SOURCE shall comply with all Laws, including Laws relating to data privacy, trans-border data flow or data protection, including regulations, policies, rules and guidelines governing the collection, use or management of personally identifiable information, and applicable industry standards concerning privacy, data protection, confidentiality or information security (collectively, "Data Privacy Laws") applicable to it as a provider of information technology services ("Provider Laws"). Without limiting the generality of the first sentence of this subsection D, in addition to General Laws, Client shall comply with all Laws, including Data Privacy Laws, specifically applicable to Client's receipt and use of the Services and its core businesses (the "Client Laws"). Client shall be responsible, with 4thSOURCE's cooperation and assistance, for interpreting Client Laws or changes in Client Laws and for identifying the impact of such Client Laws or changes in Client Laws on 4th SOURCE's performance and Client's receipt and use of the Services, and 4th SOURCE in providing the Services will not cause Client to become non-compliant with the Client Laws that Client has identified for 4th SOURCE pursuant to this subsection D. 4th SOURCE shall be responsible, with Client's cooperation and assistance, for interpreting Provider Laws or changes in Provider Laws and for identifying the impact of such Provider Laws or changes in Provider Laws on 4th SOURCE's performance and Client's receipt and use of the Services.

F. <u>Force Majeure</u>.  Neither party shall be responsible for failure or delay of performance if caused by: an act of war, hostilities or sabotage; act of God; electrical, internet, or telecommunication outage that is not caused by the obligated party; government restrictions; or other event outside the reasonable control of the obligated party. Both parties will use reasonable efforts to mitigate the effects of a force majeure event.

## VIII. CONFIDENTIALITY AND PROPRIETARY INFORMATION

A. <u>Definition</u>.  For purposes of this Agreement, "Confidential Information" means all information, regardless of the format in which it is provided, of Client or 4th SOURCE or its suppliers or customers, which is provided, disclosed, or developed in connection with the parties' obligations pursuant to this Agreement, whether or not such information is marked "Confidential".

B. <u>Excluded</u>.  Confidential Information shall not include information or material which: (i) at the time of its disclosure is in the public domain; (ii) after disclosure comes into the public domain, except by failure to comply with the terms of this Agreement or through other improper conduct by the disclosing party; (iii) was lawfully in the non-disclosing party's possession prior to such disclosure; (iv) is subsequently received by a party from a third party who is not in breach of any obligation of confidentiality owed in respect of the applicable information or material; or (v) a party is required to disclose, retain or maintain by applicable law or regulation or under the rules of any relevant regulatory or government authority, provided that the disclosing party shall give the owner of the Confidential Information



reasonable advance written notice of any such proposed disclosure and the disclosing party shall use its reasonable best efforts to secure confidential treatment of any such information disclosed.

C. <u>Confidential Information of Client</u>. Confidential Information of Client shall include, without limitation Client's trade secrets, methodologies, business plans, supplier lists, customer lists, customer data, cost and price data, marketing information, software, computer and telecommunications systems, memoranda, papers, letters, e-mail, notes, plans, documentation, records, and all copies thereof, relating to the existing or planned business or technology of Client.

D. <u>Confidential Information of 4th SOURCE</u>. Confidential Information of 4th SOURCE shall mean (i) 4th SOURCE's trade secrets, methodologies, business plans, supplier lists, customer lists, customer data, cost and price data, marketing information, software, computer and telecommunications systems, memoranda, papers, letters, e-mail, notes, plans, documentation, records, and all copies thereof, relating to the existing or planned business or technology of 4th SOURCE.

E. <u>Confidentiality</u>. Both parties agree that during the term of this Agreement, and for three (3) years thereafter, that they shall not to sell, license, transfer, publish, disclose, display or otherwise make available to others, or use, any Confidential Information of the other party except for the purpose of this Agreement and shall only disclose Confidential Information to its personnel having a need to know in connection with this Agreement; unless the party first obtains the prior written consent of the disclosing party. The parties shall not make, or permit to be made, any copies of Confidential Information, except in connection with this Agreement. Neither party shall, nor shall it permit, the removal of any Confidential Information (or any copy or summary thereof) of the other party from the Client location at which the Services are performed. The parties shall be fully responsible for compliance with its confidentiality obligations by its personnel and subcontractors, and any breach thereof.

F. <u>No License Granted</u>. No license to either party's Confidential Information is either granted or implied by the disclosure of Confidential Information.

G. <u>Return of Information</u>. Within fourteen (14) days of a request by the disclosing party, the receiving party will return all property including, but not limited to, documents, records, tapes and any other media as well as all copies thereof in its possession or under its control that contains Confidential Information of the disclosing party.

H. <u>Injunctive Relief</u>. Both parties acknowledge that unauthorized disclosure of any Confidential Information of the other party will cause irreparable injury to the owner of such Confidential Information, which injury shall be inadequately compensable in damages. Accordingly, the parties may seek and obtain injunctive relief against the breach or threatened breach by the other party of its confidentiality obligations hereunder, in addition to any other legal remedies which may be available.

## IX. INDEMNITY AND LIMITATION OF LIABILITY

A. <u>Indemnification by Client</u>. Client shall indemnify, defend and hold harmless 4th SOURCE and its affiliates and their respective officers, directors, employees, agents, representatives, successors and assigns from and against any and all claims and all Losses and threatened Losses due to third-party claims arising or resulting from any of the following:

(i)   Client's breach of any of its representations or warranties set forth herein;

(ii)  Client's failure to comply with any Laws for which it has responsibility under Section VII (D);

(iii) any aspect of the employment of Client or the termination of such employment, including claims relating to (i) payment or failure to pay any salary, wages or other compensation due and owing to



such Client employees, (ii) payment or failure to pay any pension or other benefits of such Client employees, (iii) liability for any social security or other employment taxes, workers' compensation claims and premium payments, and contributions applicable to the wages and salaries of such Client employees, and (iv) wrongful discharge and claims for breach of express or implied employment contract;

(iv) the breach by Client or any Client personnel (or any Client subcontractor) of their obligations with respect to 4th SOURCE's Confidential Information under Article VIII; or

(v) the provision of the Services in respect of Client customers, except to the extent related to a breach of this Agreement or a SOW by 4th SOURCE.

B. <u>Indemnification by 4th SOURCE.</u>  4th SOURCE shall indemnify, defend and hold harmless Client and its affiliates and their respective officers, directors, employees, agents, representatives, successors and assigns from and against any and all claims and all losses, liabilities, damages, fines, and penalties paid or payable to or for the benefit of any third party asserting a claim (including such third party's successors and assigns) pursuant to any settlement, judgment or award with respect to such claim (including taxes), and all related costs and expenses (including reasonable legal fees and disbursements and out-of-pocket costs of investigation, experts, litigation, settlement, judgment, interest and penalties) (collectively, "Losses") and threatened Losses due to third-party claims arising or resulting from any of the following:

(i) the damage, loss or destruction of any real or tangible personal property caused by the negligence or other tortious conduct of 4th SOURCE or any 4th SOURCE personnel (or any 4th SOURCE subcontractor);

(ii) the death or bodily injury of any employee, agent, customer, business invitee, business visitor or other individual caused by the negligence or other tortious conduct of 4th SOURCE or any 4th SOURCE personnel (or any 4th SOURCE subcontractor);

(iii) 4th SOURCE's breach of any of its representations or warranties set forth herein;

(iv) the breach by 4th SOURCE or any 4th SOURCE personnel (or any 4th SOURCE subcontractor) of their obligations set forth in Sections VII (C);

(v) 4th SOURCE's failure to comply with any Laws for which it has responsibility under Section VII (D);

(vi) the breach by 4th SOURCE or any 4th SOURCE personnel (or any 4th SOURCE subcontractor) of their obligations with respect to Client Confidential Information under Article VIII; or

(vii) any aspect of the employment of 4th SOURCE personnel or the termination of such employment, including claims relating to (i) payment or failure to pay any salary, wages or other compensation due and owing to any 4th SOURCE personnel, (ii) payment or failure to pay any pension or other benefits of any 4th SOURCE personnel, (iii) liability for any social security or other employment taxes, workers' compensation claims and premium payments, and contributions applicable to the wages and salaries of such 4th SOURCE personnel, (iv) any violation of Laws protecting persons or members of protected classes or categories and (v) wrongful discharge, claims for breach of express or implied employment contract and claims that Client is an employer, co-employer or joint employer of any 4th SOURCE personnel.

C. <u>Indemnification by Both Parties.</u>  Both parties agree to indemnify, defend, and hold harmless the other party and its parents, subsidiaries, affiliates, officers, directors, and employees, from any and all Losses to the extent based on: infringement of any patent, copyright, trademark, trade secret or other third party intellectual property right or contractual right based on any material provided by one party to the other party and incorporated into the Work Product or Deliverable furnished to the Client by 4th SOURCE pursuant to the terms of this Agreement;



D. <u>Limitation of Liability</u>. IN NO EVENT WILL EITHER PARTY BE LIABLE FOR ANY INDIRECT, PUNITIVE, SPECIAL, OR CONSEQUENTIAL DAMAGES ARISING OUT OF OR RELATED TO THIS AGREEMENT, EVEN IF ADVISED OF THE POSSIBILITY OF SUCH DAMAGES; PROVIDED, HOWEVER, THAT THE FOREGOING LIMITATION SHALL NOT APPLY TO (i) AMOUNTS PAYABLE IN CONNECTION WITH PARTY'S INDEMNIFICATION OBLIGATIONS HEREUNDER, (ii) LOSSES ARISING OUT OF A PARTY'S BREACH OF ARTICLE VII, OR (iii) LOSSES ARISING OUT OF PARTY'S GROSS NEGLIGENCE, WILLFUL MISCONDUCT OR FRAUD.

## X.   RESTRICTIVE COVENANTS

A. <u>Agreement Not to Solicit Employees</u>.  During the term of the of this Agreement and for a period of twelve (12) months following the termination of this Agreement for any reason whatsoever, neither party shall, either directly or indirectly, solicit, divert or hire, or attempt to solicit, divert or hire, any person employed or contracted by the other party, with whom the party had regular contact in the course of this Agreement, whether or not the employment of any such person is pursuant to a written agreement, for a determined period or at will.

B. <u>Agreement Not to Solicit Customers</u>. During the term of this Agreement and for a period of twelve (12) months following the termination of this Agreement for any reason whatsoever, neither party shall (except on behalf of or with the prior written consent of the other party), either directly or indirectly, on the party's, or its employee's own behalf or on behalf of others, (1) solicit, divert, or appropriate, or (2) attempt to solicit, divert, or appropriate, any business from any customer or actively sought prospective customer of the other party with whom the party or any of its employees has had regular contact in the course of providing Services pursuant to this Agreement.

## XI.   TERMINATION

A. <u>For Convenience</u>. Either Party may terminate this Agreement for any reason or no reason upon ninety (90) days' written notice unless the notice establishes a later termination date. However, upon termination of this Agreement, SOWs will remain in effect and be governed by the terminated Agreement until the termination date listed in the SOW or until services are completed per the terms of the SOWs.

B. <u>For Cause</u>.  Either party may, by giving written notice identifying the basis for such notice, terminate this Agreement with respect to all or any part of the Services, as of the date specified in the notice of termination, if either party commits a material breach of this Agreement, which breach is not cured within 30 days after receipt from Client or 4th SOURCE of written notice of the breach specifying in reasonable detail the nature of the breach.

C. <u>For Nonpayment</u>.  If Client has failed to pay any undisputed Charges in accordance with the payment terms set forth herein, then 4th SOURCE may deliver a written notice to Client stating the full amount of such past due charges, and stating 4th SOURCE's intent to terminate this Agreement or suspend the Services unless the full amount of such undisputed Charges are paid (the "Suspension/Termination Notice"). Following receipt of a Suspension/Termination Notice with respect to any undisputed charges, Client shall have 15 days to either (i) deliver a written notice of a good faith dispute with respect to all of such charges, (ii) pay all of such charges, or (iii) deliver a written notice of a good faith dispute with respect to a portion of such charges and pay the amount of undisputed charges. If Client has failed to pay and/or dispute such charges by the end of such 15 days following receipt of the Suspension/Termination Notice, 4th SOURCE may terminate the Agreement or suspend the Services immediately after written notice to Client.



D. <u>Unexpected Project Cancellation/Termination.</u> In the event this agreement or any SOW is cancelled or terminated, 4th SOURCE will expect Client to make a payment for all Services rendered, plus, make a 30-day additional payment to allow for transition of the existing delivery team.

E. <u>Obligations Upon Termination</u>. Each party shall promptly return to the other party any and all Confidential Information of the other party. On termination, all obligations of the parties under this Agreement related to 1) confidentiality; 2) indemnity; 3) ownership rights; and 4) any applicable warranty, shall survive the termination or expiration of this Agreement.

## XII. GENERAL

A. <u>Notices</u>. Any notice given pursuant to this Agreement must be in writing and will be given by either a nationally recognized overnight delivery service, personal delivery, United States certified mail, return receipt requested, postage prepaid, or by facsimile capable of providing confirmation of receipt, to the addresses or facsimile numbers appearing at the end of this Agreement, or as changed through written notice to the other party. Notice will be deemed effective on the date it is delivered to the addressee. Either Party may change its address for notice purposes by giving the other party notice of such change in accordance with this Section.

B. <u>Assignment</u>. This Agreement shall be binding upon the parties' respective successors and permitted assigns. Neither party may assign this Agreement or any of its rights or obligations hereunder without the prior written consent of the other party ; provided, that Client may assign its rights and obligations under this Agreement, without the approval of 4th SOURCE, to (i) any of its affiliates that expressly assumes Client's obligations and responsibilities under this Agreement, provided, that Client shall remain fully liable for and shall not be relieved from the full performance of all obligations under this Agreement, or (ii) any entity that acquires all or substantially all of Client's assets or Client's successor by way of merger or acquisition . Both parties agree that any permitted assignment it makes hereunder shall not relieve the parties of their respective obligations hereunder.

C. <u>Governing Law</u>. This Agreement shall be governed by and construed in accordance with the laws of the State of Florida without reference to the conflicts of law provisions thereof. The parties hereby irrevocably submit to the non-exclusive jurisdiction of the state district and federal courts located in Hillsborough County, Florida for purposes of any claim hereunder, and each party hereby irrevocably agrees that all claims may be heard and determined in the state district and federal courts located in Hillsborough County, Florida. The parties hereby irrevocably waive, to the fullest extent permitted by applicable law, any objection which they may now or hereafter have to the laying of venue of any such dispute brought in such court or any defense of inconvenient forum for the maintenance of such dispute. Each of the parties hereto agrees that a judgment in any such dispute may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.

D. <u>Waiver</u>. A failure of either party to exercise any right provided for herein, shall not be deemed to be a waiver of any right hereunder.

E. <u>Complete Agreement</u>. This Agreement and applicable SOWs set forth the entire understanding of the parties as to the subject matter therein and may not be modified except in a writing executed by both parties. No modification, amendment, supplement to or waiver of this Agreement hereunder, or any of their provisions shall be binding upon the parties hereto unless made in writing and duly signed by both parties.

F. <u>Severability</u>. In the event any one or more of the provisions of this Agreement is invalid or otherwise unenforceable, the enforceability of remaining provisions shall be unimpaired.



G. <u>Independent Contractor</u>.  4th SOURCE's relationship with Client will be that of an independent contractor. Nothing in this Agreement is to be construed as designating 4th SOURCE an agent or employee of Client.

H. <u>Remedies</u>.  The rights and remedies of the parties as set forth in this Agreement are not exclusive and are in addition to any other rights and remedies available to them in law or in equity.

I. <u>Surviving Sections</u>.  Sections VI, VII, VIII, IX, X, and XI shall survive any expiration or termination of this Agreement.

J. <u>Counterparts</u>.  This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same document.

K. <u>Reference:</u>  **After successful completion of Services under an SOW, client agrees to provide up to 3 reference calls, and/or joint speaking engagements.  Client also agrees to publish a detailed case study highlighting the developed product, and agrees to allow 4th SOURCE, and its parent company, AN Global, the use of Client's name and logo in any marketing material.**

**IN WITNESS WHEREOF**, the Parties have caused this Agreement to be executed as of the date written above.

| 4TH SOURCE, LLC. | CLIENT |
|---|---|
| By: *Carolyne Cesar* (Carolyne Cesar Apr 2, 2019) | By: *Jon B. Peters* |
| Name: Carolyne Cesar | Name: Jon B. Peters |
| Title: CFO | Title: President |
| Date: Apr 2, 2019 | Date: March 28, 2019 |
| Address and facsimile number for Notice: | Address and facsimile number for Notice: |
| 2502 N. Rocky Point Suite 960 | 1701 Shelby Oaks Drive, Suite 3 |
| Tampa, FL 33607 | Memphis, TN 38134 |
| Fax: N/A | Fax: (901) 201-5465 |