## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| ANOVORX HOLDINGS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:22-cv-02557 |
| | ) | |
| | ) | |
| AGILETHOUGHT, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT AGILETHOUGHT, INC.'S
## ANSWER TO PLAINTIFF'S COMPLAINT AND COUNTERCLAIM

Defendant AgileThought, Inc. ("AgileThought" or "Defendant") files this answer to the Complaint (ECF Doc. 1) filed by Plaintiff, AnovoRX Holdings, Inc. ("Anovo" or "Plaintiff"). Defendant, using the same paragraph numbers for convenience, and alleges as follows:

### GENERAL ALLEGATIONS

1.       Upon information and belief, the allegations contained in Paragraph 1 of the Complaint are admitted.

2.       Admitted.

3.       Admitted.

4.       Admitted.

### FACTUAL ALLEGATIONS

5.       Admitted.

6.       Admitted.

7.       Admitted. The contract is to provide "certain information technology services."

8.      Denied. The effective date is March 28, 2019.

9.      Denied.

10.     Admitted.

11.     Admitted.

12.     Admitted.

13.     Admitted.

14.     Denied.  A statement of work is required by the MSA, which "will describe the Services to be performed, the planned start date, the projected end date, and other relevant dates if any ('Services Schedule')", and other items defined as Warranty of Services, Dependencies, Deliverables, Fees, and Special Terms. The MSA does not state the SOW is "required" to set forth the information alleged or otherwise use the term "required."

15.     Denied. The MSA provides that "The SOW will describe . . . the identifiable work product resulting from the Services ('Deliverables')".  The MSA does not state the SOW is "required" to set forth the information alleged or otherwise use the term "required."

16.     Denied. "The SOW will describe . . . the fixed price or time & materials rates and payment schedule ('Fees')". The MSA does not state the SOW is "required" to set forth the information alleged or otherwise use the term "required."

17.     Denied.  The MSA provides that "The SOW will describe . . .the fixed price or time & materials rates and payment schedule ('Fees') and any other terms applicable to the specific SOW not addressed by this Agreement ('Special Terms')." The MSA does not state the SOW is "required" to set forth the information alleged or otherwise use the term "required."

18.    Denied. SOW #1 is part of an agreement by which 4th Source agreed to provide specified Services[1] and provide specified Deliverables, both of which relied on Anovo providing certain Dependencies.  In return for this defined set of work, 4th Source stated that it would "deliver this project as a fixed-fee engagement for $1,600,000.  Client will be invoiced for actual hours worked at a blended rate of $28.22 per hour, with any adjustment/remaining hours to be invoiced in September 2020."  Further the parties agreed that "Software developed will be based on requirements gathered during initial assessment, and anything outside of those requirements will be discussed and may be deemed out of scope."

19.    Denied.  The "Software functionality" of "Deliverables" set forth in Section D of SOW #1 is not accurately reproduced in the allegations of this paragraph.

20.    Admitted that the parties agreed that services identified in SOW #1 would begin on or about August 5, 2019.

21.    Denied.  The parties agreed that the services covered in SOW #1 would be completed on approximately September 30, 2020, but the parties further agreed that Anovo would have to perform under the contract to meet that date and work outside of the services and obligations contemplated in SOW #1 could alter the deadlines and cost.

22.    Admitted.

23.    Denied.

24.    Admitted that Anovo made such payments.  Denied that they were limited to the "work effort set forth in SOW #1."

25.    Denied.

---

[1] Capitalized terms shall have the same meanings as set forth in the MSA.

26.     Admitted that 4th Source did not deliver the contractually agreed upon Software Product by March 31, 2021, and denied that 4th Source existed for that entire point in time, denied that the "Software Product" identified in SOW #1 was still the one on which the parties had "contractually agreed."

27.     Denied.

28.     Admitted that AgileThought proposed a "re-set of fees" but denied as to the remaining allegations of this paragraph.

29.     Admitted.

30.     Denied that this was the full extent of the May 2021 Workshop and admitted as to the remaining allegations of this paragraph.

31.     Admitted.

32.     Admitted that AgileThought requested modifications to the fee arrangement, denied that it was a modification to SOW #1, denied that any underestimations of time and resources was solely attributable to 4th Source, denied that Anovo did not have an obligation to negotiate modified payment terms for the change in the scope and complexity of work and lack of engagement.

33.     Admitted.

34.     Admitted.

35.     Admitted.

36.     Admitted that this alleged statement was part of the email communication.

37.     Admitted that the parties agreed to a fee schedule for "remaining work identified during May's workshop." Denied the email set forth a "proposed" fee schedule. Denied that the fee schedule was for a "Software Product", as defined in the Complaint.

38.    Admitted.

39.    Admitted that the allegations of this paragraph accurately reproduce two sentences of that referenced email chain.

40.    Admitted that the allegations of this paragraph accurately reproduce one portion of one sentence of SOW #2.

41.    Denied that the allegations of this paragraph fully recite the basis for the fees in SOW #1.

42.    The referenced SOW #2 speaks for itself. To the extent the allegations contained in Paragraph 42 of the Complaint are inconsistent with the referenced SOW #2, they are denied.

43.    Admitted.

44.    Admitted as to amount. Denied that payments occurred in 2022.

45.    Denied.

46.    Admitted that the quoted allegations of this paragraph are accurately quoted.

47.    Admitted that SOW #3 set forth the terms and conditions for the Services and denied that it specified the requirements for the Software Product to be completed.

48.    Admitted that the allegations of this paragraph accurately quote one sentence of SOW #3.

49.    Denied.  Appendix "A" describes itself as a "Features List" and not "deliverables", which is a defined term in the Services Agreement.

50.    Admitted.

51.    Admit that SOW #3 contains such language.

52.    Admitted that the parties never executed a document entitled "change order" but denied that the parties never agreed to a change in the scope.

53.    Admitted that the Services Agreement contains such a provision but denied that SOW #3 required such information.

54.    Admitted that the paragraph accurately quotes one portion of one sentence of SOW #3 and denied that is the complete statement. Admitted as to the remaining allegations of the paragraph.

55.    Denied that the allegations of this paragraph accurately depict the terms of SOW #3.

56.    Admitted that SOW #3 contains a provision entitled "Proposed Delivery Schedule."

57.    Admitted.

58.    Admitted that the parties never executed a document entitled "change order" but denied that the parties never agreed to a change in the scope.

59.    Admitted that the parties never executed a document entitled "change order" but denied that the parties never agreed to a change in the scope.

60.    Admitted.

61.    Admitted.

62.    Admitted.

63.    Denied.

64.    Admitted that Mr. Peters sent the email alleged in this paragraph. Denied that AgileThought would quit working on SOW #3 irrespective of completion status. The remaining allegations are admitted.

65.    Admitted that Kevin Johnston became primary point of contact for AgileThought. Denied as to the remaining allegations of this paragraph.

66.    AgileThought admits that a virtual meeting was held on or around December 14, 2021, and attended by multiple representatives of Anovo and AgileThought.  The remaining allegations contained in this paragraph are denied.

67.    Denied.

68.    AgileThought admits that in late December/January 2022 Mr. Truitt and communicated with one of AgileThought's Managing Directors, Paul Mallabar.  The remaining allegations of this paragraph are denied.

69.    Denied.

70.    Denied.

71.    Denied.

72.    Admitted.

73.    Admitted.

74.    Admitted.

75.    Admitted that AgileThought has ceased performing under SOW # 3 and providing information technology services to Anovo.

## COUNT I – BREACH OF MASTER SERVICE AGREEMENT
## AND STATEMENT OF WORK #3

76.    Defendant incorporates its responses to Paragraphs 1-75 as if fully realleged.

77.    Admitted.

78.    Denied.

79.    Denied.

## COUNT II – ANTICIPATORY BREACH OF MASTER SERVICE AGREEMENT
## AND STATEMENT OF WORK #3

80.    Defendant incorporates its responses to Paragraphs 1-79 as if fully realleged.

81.    Admitted.

82.    Denied.

83.    Denied.

84.    Denied.

85.    Denied.

86.    Denied.

## COUNT III – BREACH OF MASTER SERVICE AGREEMENT
## AND STATEMENT OF WORK #1

87.    Defendant incorporates its responses to Paragraphs 1-86 as if fully realleged.

88.    AgileThought admits that SOW #1 and the MSA constituted an enforceable contract until those contracts were subsequently replaced by SOW #3 and therefore deny that SOW #1 remains an enforceable contract.

89.    Denied.

90.    Denied.

91.    Denied.

## COUNT IV – BREACH OF MASTER SERVICE AGREEMENT
## AND STATEMENT OF WORK #2

92.    Defendant incorporates its responses to Paragraphs 1-91 as if fully realleged.

93.    Admitted.

94.    Denied.

95.    Denied.

## COUNT V – FRAUD IN THE INDUCEMENT

96.    Defendant incorporates its responses to Paragraphs 1-95 as if fully realleged.

97.     The referenced MSA and SOW #1 speaks for themselves. To the extent the allegations contained in Paragraph 97 of the Complaint are inconsistent with the referenced MSA and SOW #1, they are denied.

98.     Denied.

99.     Denied.

100.    Denied.

101.    Denied.

102.    Denied.

103.    Denied.

## COUNT IV – CONVERSION

104.     Defendant incorporates its responses to Paragraphs 1-103 as if fully realleged.

105.    The referenced MSA speaks for itself. To the extent the allegations contained in Paragraph 105 of the Complaint are inconsistent with the referenced MSA, they are denied.

106.    The referenced MSA speaks for itself. To the extent the allegations contained in Paragraph 106 of the Complaint are inconsistent with the referenced MSA, they are denied.

107.    The referenced MSA speaks for itself. To the extent the allegations contained in Paragraph 107 of the Complaint are inconsistent with the referenced MSA, they are denied.

108.    Admitted that Anovo paid over $2 million for technology services under the MSA, SOW #1, SOW #2, and SOW #3.

109.    Denied.

110.    Denied.

111.    Denied.

Defendant denies all allegations not specifically admitted. In response to *ad damnum* clause, Defendant denies that Plaintiff is entitled to any of the relief prayed for in the Complaint.

### DEFENSES & AFFIRMATIVE DEFENSES

Pursuant to Federal Rule of Civil Procedure 8(c), Defendant alleges the following additional defenses and affirmative defenses:

***First Affirmative Defense: Failure to State a Claim Upon Which Relief May Be Granted.***

Plaintiff's Complaint fails to state a claim upon which relief can be granted because of the following:

a) As to the breach of contract for SOW #1 and #2 (Counts III and IV), there is no cause of action, because those statements of work were fully performed and superseded by SOW #3, which provides that "Neither party shall have any further obligation under SOW #1."

b) As to Anticipatory Breach of Master Service Agreement and Statement of Work #3, Anovo misrepresents the legal obligation under SOW #3, which provides at Section 2.1 that Anovo would have the responsibility for ensuring that the project scope was within the budget and time constraints so that an increase in cost or completion date after May 2022 was the responsibility of Anovo.

c) As to Fraud in the Inducement (Count V), Anovo failed to plead:

    a. That AgileThought made an affirmative material misrepresentation or omission in the face of a duty to speak;

    b. any obligation to pay a blended rate or agreement to pay a blended rate so that any misrepresentation, even if proven, is not material.

    c. That Anovo reasonably relied on any alleged representations when it failed to ask at any point in time, what the blended rate would be, if it was material to it.

d) As to Conversion (Count VI), Anovo has failed to plead that it has made demand for the return of property or refusal to return the property.  Further, there is no "Software Product", which was defined by Anovo in connection with SOW #1 that could be converted.

**Second Affirmative Defense:  Doctrine of First Breach.**

Anovo breached the parties' agreement by not providing the direction and input into the services set forth in SOW #3 and then later breached SOW # 3 by failing to make payment for services rendered in conformity with the parties' contract.   As an anticipatory breach, AgileThought was relieved of any further obligation under SOW # 3.

**Third Affirmative Defense Set-Off**

Any sums recoverable by Anovo are subject to set-off by any recovery obtained by AgileThought.

**Fourth Affirmative Defense of Unclean Hands**

As to any equitable claims asserted by Anovo, those claims are barred by the doctrine of unclean hands. As more fully set forth in the Counterclaim, Anovo requested work from AgileThought that exceeded the scope of SOW # 3 without any intention of paying for such additional work, although such additional work was the result of Anovo's requests and failure to provide the direction and guidance it had promised.

**Fifth Affirmative Defense of Waiver/Estoppel/Novation**

Anovo's claims are barred by the doctrines of waiver, estoppel, and novation. By agreeing to SOW # 3, Anovo had waived any claims under SOW # 1 and # 2 and is estopped from now pursuing claims under such agreements.

*Reservation of Rights as to Plead Additional Fifth Affirmative Defenses*

AgileThought reserves the right to amend this Answer and plead additional affirmative defenses and to plead its defenses more specifically as may become apparent during the course of this action and discovery.

WHEREFORE, AgileThought respectfully requests that the Complaint be dismissed with prejudice and all costs be assessed against Plaintiff and that Defendant be granted such other relief as the Court deems appropriate.

## COUNTERCLAIM

Defendant/Counter-Plaintiff AgileThought, Inc. ("AgileThought" or "Counter-Plaintiff") alleges the following Counterclaim against Plaintiff/Counter-Defendant, AnovoRX Holdings, Inc. ("Anovo" or "Counter-Defendant"). In support, AgileThought alleges as follows:

## INTRODUCTION

This matter stems from the last in a series of agreements between AgileThought and Anovo, in which AgileThought was to provide certain technology services, including, but not limited to, software design and implementation to update an existing system, for Anovo's pharmaceutical business.  As is customary in this industry, AgileThrought was dependent on its client, Anovo, to provide a clear scope and project requirements, including a point person to articulate the client design needs, so that AgileThought could create the software and solutions that Anovo wanted.  Despite repeated meetings and other good faith efforts, Anovo failed to provide AgileThought with clear direction in terms of scope and extent of the project requirements. Instead, Anovo repeatedly broadened the scope and increased the complexity of what it desired beyond the terms of the parties' agreements.  As a result, and despite repeated efforts by AgileThought to continue work on the project and resolve these issues, Anovo could not, or would

not, perform its obligations thus frustrating AgileThought's efforts to fully perform the project, all

the while refusing to pay invoices due, while incurring even more costs and expenses in pursuing

Anovo's everchanging project.

## PARTIES, JURISDICTION, AND VENUE

1.      AgileThought is a corporation organized under the laws of Delaware and maintains

a principal place of business at 222 West Las Colinas Blvd., Suite 1660E, Irving, Texas 75039.

2.      Anovo is a corporation organized under the laws of the State of Tennessee and

maintains a principal place of business at 1710 Shelby Oaks Dr. N, Suite 2, Memphis, Tennessee

38134.

3.      This Court has jurisdiction over this Counterclaim pursuant to, *inter alia*, 28 U.S.C.

§ 1332.

4.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 123(c)(2) and 1391(b)(2).

## FACTS

5.      Anovo is in the wholesale pharmacy and pharmacy distribution business.  It desired

to modernize its software systems for managing wholesale pharmacy client ordering and

fulfilment.

6.      In order to develop the desired software systems and other technological advances,

on March 28, 2019, Anovo engaged 4th Source, LLC ("4th Source") to provide certain technology

services and software design and implementation, pursuant to that certain Master Services

Agreement ("Services Agreement"), a copy of which is attached as **Exhibit A**.  The Services

Agreement provided that Anovo "may request 4th SOURCE to provide certain information

technology services" and that such services would be "set forth in a statement of work" constituting

a "separate contract".

13

7.      The scope of the services was reflected in the Statement of Work dated July 19, 2019 ("SOW #1").  A copy of SOW #1 is attached as **Exhibit B**.

8.      The services to be provided by 4th Source under SOW #1 included:

> A. <u>Services</u>.
>
> **4th Source** will perform the following services (the "Services"):
>
> - Business analysis to further refine requirements, documentation and creation of user stories
> - Architecture and technical design
> - Development of the system according to the requirements, including support during testing
> - Documentation of the technical design
> - Creation of test plan, test cases and test scripts for the changes
> - Unit and Quality Assurance testing
> - Support from developers and testers during User Acceptance Testing
> - Project Management oversight throughout engagement
> - Development, testing and project management support for a warranty period of 30 calendar days following Production deployment
> - Defect tracking and reporting in all software development phases

9.      4th Source was not in the pharmacy business and could not independently provide Anovo with expertise in the needs, goals, operations, and processes of Anovo's business. Accordingly, Section D of SOW #1 memorialized the parties' agreement that Anovo would have to closely collaborate with 4th Source to provide technical and business input in the creation and development of the software.   This is, for example, set forth in the section of SOW #1, under "Dependencies", which provides:

> C. <u>Dependencies</u>.
>
> The following is a list of dependencies necessary for the successful completion of this effort. **4th Source** has used this information in establishing the Services Schedule and Fees & Milestones.  In the event an item identified below does not occur in the manner or time frame shown, such circumstance shall constitute a change that may require an adjustment to the Services Schedule and/or Fees & Milestones.
>
> - Dedicated time from Client's existing technical resources and subject matter experts
> - Access to logical and physical systems and data as required, and in compliance with regulatory guidelines, including HIPAA
> - Access to existing system documentation and training materials
> - Access to the current and future state Key-Performance-Indicators (KPI) and their associated formulas
> - Timely feedback and response to requests for information or questions on user acceptance test results

10.    SOW #1 clearly indicates that "[i]n the event an item identified below [under "Dependencies"] does not occur in the manner or time frame shown, such circumstance ***shall constitute a change that may require an adjustment to the Service Schedule and/or Fees & Milestones***." *Id.* (emphasis added).

11.    In or around July 21, 2019, a company called AgileThought LLC was acquired by 4th Source's parent company and the resulting company – the defendant/counter-plaintiff in this proceeding -- was named "AgileThought, Inc." ("AgileThought"). After the acquisition, AgileThought began providing services under SOW #1 to Anovo.

12.    It became apparent to AgileThought that the software development services Anovo was seeking had changed substantially from those set forth in SOW #1.  AgileThought needed client direction and feedback to understand how the project had already evolved and what Anovo was looking for at that time.

13.    AgileThought and Anovo scheduled a Microsoft Teams meeting for May 6, 2021, in order to "Review approach and discuss path forward."  During that meeting, the parties discussed the need to develop a plan in order to move forward and proposed planning workshop at Anovo during week of May 17, 2021 ("May 2021 Workshop").

14.    During the May 2021 Workshop, which lasted the three and one-half days, the parties went through Anovo's existing systems module-by-module so that Anovo could clearly define for AgileThought the specifics of its desired, updated software.

15.    On May 20, 2021, AgileThought wrote to Anovo regarding next steps, which included

a.    AgileThought providing "an effort estimation / duration of the work ahead to complete Release 1"
b.    AgileThought working to "categorize the work across 'New requirements' v 'Change in scope' v 'Already known'" in order to "build out a high level picture"

15

      c.      Establish Steering Committee to review and provide governance to the program as we work forward

      d.      Outline a product road map to illustrate a) what features by business process that are implemented v) features by business process to be worked on

A copy of the May 20, 2021 email entitled "Follow ups and next steps – Anovo/AgileThought workshop" is attached as **Exhibit C**.

16.      On or about June 8, 2021, Pall Mallabar of AgileThought informed Anovo COO Kyle Truitt that the revisions to the project identified in the May 2021 Workshop constituted a change in scope from SOW #1.

17.      Shortly afterwards, on June 23, 2021, the chief executives of AgileThought and Anovo met by telephone to discuss the parties' relationship with the change in scope from SOW #1.  They agreed to a one-time invoice to cover development costs that had been incurred during April, May, and June of 2021, and further agreed that a new statement of work should be prepared to identify the revised project.  Further, AgileThought agreed to complete the work identified in the May 2021 Workshop for $750,000.

18.      Anovo made the agreed-upon payment for services performed, which was reflected in the Statement of Work #2 ("SOW #2).  That SOW #2 memorialized that it "accounts for the incremental project deliverables in order to address and understand the scope and work required".  A copy of SOW #2 is attached as **Exhibit D**.

19.      Further, AgileThought prepared and delivered a proposed third statement of work ("SOW #3) to Anovo, which reflected the work contemplated during the May 2021 Workshop. SOW # 3 was accepted and effective as of July 1, 2021. A copy of SOW #3 is attached **as Exhibit E**.

20.      At this point, SOW #3 was the only statement of work and the only existing contract between the parties.

21.    This SOW #3 acknowledged that "the overall effort to deliver the Product . . . has
been scoped at a very high level between the parties, the detailed scope of the Product to be
delivered will continue to evolve during the iteration planning" and further refinements.  SOW #
3 at Section 2.1.

22.    Section 2 of SOW #3 further provided that "During development and delivery,
Service Provider [AgileThought] is solely focused on bringing the Product to life and working
with Anovo to ***continually refine the scope*** of the Product." (emphasis added).

23.    AgileThought launched a "Success Committee", with members from Anovo, which
was designed to meet every other week to "provide visibility into project status, resolve escalated
issues, manage risks, discuss opportunities for improvement, rally support for the team."
AgileThought/Anovo CMI – Success Committee Review, dated July 9, 2021, as copy of which is
attached as **Exhibit F**, at 2.

24.    Very quickly in time following execution of SOW #3, it became clear that Anovo
(1) wanted changes from what it had presented at the May 2021 Workshop and what was agreed
to in SOW #3 and (2) did not have personnel dedicated to being able to define what the
requirements of the software were and equipped with decision making authority, despite SOW
#3's requirement that "AnovoRX will provide a full-time dedicated Product Owner(s) with (i) deep
knowledge of the Product's requirements and (ii) appropriate authority (or access to authority) to
make decisions on the scope of Services and issue resolution."

25.    In the deliverable refinement sessions occurring after the execution of SOW #3,
Anovo team requested changes and additional functionality not raised during the May 2021
Workshop.

26.    During these deliverable refinement sessions occurring after the execution of SOW #3, AgileThought sought certainty as to required functionality and features in advance of providing development, but Anovo could not or would not provide the information sought.

27.    By August 29, 2021, Anovo has already significantly changed the project. By email dated August 29, 2021, AgileThought had written to Anovo and stated:

> Hi – as a follow up to what we talked the team is concerned that as every day we showcase progress there are more and more requirements that are being raised. Below is a summary as of yesterday. In short we have around 3 weeks of potential new work.

Email from Paul Mallabar dated August 29, 2021, to Kyle Truitt, a copy of which is attached as **Exhibit G**. AgileThought detailed the additional work, which was estimated to be approximately $50,000, in a spreadsheet, which is reproduced below:

| ID | Title | Required | New Scope? | Estimation |
|----|-------|----------|-----------|-----------|
| 22190 | Patient Profile - Fix grids for Copay, PA and PAP | Maybe | Y | 3 |
| 22787 | Add Separate Fields for Reimb and Dispensing Division to Program Config | Yes | Y | 5 |
| 23022 | View BIN/PCNs at Contract | Probably Not | Y | 2 |
| 23028 | Prescriber Address Modifications | Probably Not | Y | 2 |
| 23030 | Combine multiple shipments on one DT | Yes | Y | 3 |
| 23031 | Update Fulfillment Processing to Manage Group Shipping | Yes | Y | 8 |
| 23037 | Add Place of Service Field to NCPDP tab on master CC setup | Yes | Y | 1 |
| 23072 | Copay Card and PAP - Add Funds modal to include current and new remaining amount | Maybe | ? | ? |
| 23131 | PA - Form changes - Renewal Information for Renewal and Originating PAs | Maybe | ? | ? |
| 23132 | Create chart note documenting NCPDP fields overridden on test claims | Maybe | Y | 2 |
| 23133 | Additional NCPDP Field UI Changes | Yes | Y | 3 |
| 23161 | PA - Fix form behavior to trigger appeal process for a PA record | Yes | Y | 3 |
| 23406 | PA Message Updates - Duplicated Validation and Required Fields when Saving | Yes | ? | ? |
| 23426 | PA - Drug and NDC fields are always available but required at certain scenarios. | Yes | ? | 2 |
| 23443 | Assign DOS same value as Ship Date for Self-Pay claims | Yes | Y - but should not be change | 1 |

18

|  |  |  | request,<br>AT miss |  |
|---|---|---|---|---|
| 23444 | Allow editing of BIN/PCN selections while patient insurance is staged | Yes | Y - but should not be change request, AT miss | 1 |
| 23445 | Rename Cumulative Refill Period Label to "Cumulative Refill Period (Days)" | No | Y | 1 |
| 23447 | Display both User and DBA managed master data on master data UI | Maybe | Y | 2 |
| 23451 | Create a follow-up task upon of receipt of certain document types to ensure that patient information needs to be updated | Maybe | Y | 5 |
| 23452 | Trigger task to Pharmacy or HUB to verify patient demographic updates | Maybe | Y | 5 |
| 23453 | Update Document Attachment form to Include Ability to Create Tracked Documents | Yes | Y | 3 |
| 23476 | Add Primary Flag to patient phone numbers and update logic on rx renewal form | Yes | Y | 2 |
| 23477 | PA - HCPCPS Type - Validate that the chosen NCD matches with the selected HCPCS codes | Yes | ? | ? |
| 23478 | PA Renewal - Include PA of HCPCS type in the renewal validations | Yes | Y | 3 |
| 23501 | PAP Compassionate - Updates to trigger and BV Needed scenarios | Yes | ? | ? |
| 23525 | Add checkboxes on payment log to indicate that payment handed to Dora | Yes | Y | 2 |
| 23526 | Unhide password button at login | No | Y | 1 |
| 23554 | Require user to enter serial number at Rx Entry based on patient state | Maybe | Y | 2 |
| 23781 | PAP - For internal dispensing, the program is the claim center. | Yes | ? | ? |
| 23800 | Auto Set Rx Expiration Date | Yes | Y | 1 |
| 23808 | Add character validations to Prescriber DEA number field | Maybe | Y | 1 |
| 23809 | Validate State License on Prescriber Setup | Maybe | Y | 1 |
| 23810 | Checkbox at prescriber to indicate traveling doctor | Yes | Y | 3 |
| 23811 | Implement process for updating prescriber records on patient profile if doctor moves | Yes | Y | 3 |
| 23812 | Add color theme to payment log grid rows | Maybe | Y | 5 |
| 23813 | PAP and Copay - Exhaustion Renewal - New Record based on Payor configuration | Yes | Y | 1 |
| 23814 | Patient Interaction tasks need to show other open tasks that require patient interaction | Maybe | ? | ? |
| 23854 | HCPCS Pricing - Medicare Fee Schedules (DMEPOS) | Yes | Y | 13 |
| 24118 | Duplicate prevention logic for Payment Log | Yes | Y | 2 |
| 24178 | Re-order columns on payment log - list eft upload data from oldest to newest | No | Y | 1 |
| 24179 | Create system generated indexing note when fax is sent back to indexing | No | Y | 1 |
| 24180 | Processor field should not be required for 837 payors | Yes | Y | 1 |

| 24181 | Need field history for each BV benefit details assessment | Yes | Y | 2 |
| 24219 | Chart notes manager | Maybe | Y | 8 |
| 24220 | Documents Manager | Maybe | Y | 8 |
| 24250 | 835 Address Storage at Claim Center | Yes | Y | 3 |
| From SOW Review | Balance check log from deposit spreadsheet | Yes | Y | 2 |
| From SOW Review | Change shipment verification trigger from manuel action to system job | Yes | Y | 3 |
| From SOW Review | Assign users to ship clearance and billing queues | Yes | Y | 8 |
| From SOW Review | Spanish Version of DT | Yes | Y | 3 |
| From SOW Review | Test Claim Reversal Queue | Yes | Y | 8 |
| **Total** | | | | **140** |

28.     As of November 2021, Anovo had unpaid invoices for costs going back to March 2021 and had not paid pursuant to SOW # 3 since it was signed.

29.     Meanwhile, Anovo was continuing to increase the scope of the services and failing to provide the contractually required input and direction as the project owner that was   necessary to focus the services and deliver the work that both parties wanted.

30.     Consequently, in November 2021, AgileThought informed Anovo that it would continue working through May 2022 and turn over the materials it had produced or it would continue providing the expanded scope of services at an extra charge.

31.     In response, on November 17, 2021, Anovo responded, claiming that SOW # 3 was to be completed by May 2022 at a flat fee and entirely ignoring its failure to perform under SOW # 3 in payment and performance, all the while asking for more and more beyond the agreed upon scope of services.

32.    Ultimately, on December 14, 2021, AgileThought and Anovo representatives spoke and agreed on "2 immediate actions and takeaways."  *See* email of December 14, 2021, from Paul Mallabar, a copy of which is attached as **Exhibit H**.  The first was "Outstanding invoices". The second item was "Scope Management."

33.    On December 23, 2021, AgileThought followed up on that call with an email and "Executive Summary."  *Id.*  That document identified that the project was backlogged because the project scope was "underestimated", AgileThought required a "deeper understanding" from Anovo, and there was increased "scope complexity." Executive Summary – Anovo Presentation dated December 23, 2021, a copy of which is attached as **Exhibit I**, at 1.

34.    AgileThought identified the associated costs up to that date for the increased scope and complexity, which was above that discussed and agreed upon at the May 2021 Workshop or SOW # 3 at $180,000.  Further, AgileThought identified that work in excess of the original baseline would be charged at $81 per hour.  AgileThought stated that "there is a need to improve program governance in order to better manage transparency and decision making where timeline, effort or financials may be impacted as a result of estimate refinement or requirement changes."  As a result, "As estimate refinement for stories / backlog items are finalized, the final effort to complete each will vary. The impact from estimate refinement will be managed in weekly CMI governance meeting."  *Id.*

35.    Also included in that December 23, 2021 follow up email was a detailed "Anovo Feature Inflation Analysis," a copy of which is attached as **Exhibit J**.  That spreadsheet detailed specific instances of regarding delays and increased costs in the project.

36.    On January 5, 2022, AgileThought followed up with Anovo to determine "when we can regroup to align how we move forward?"  A copy of the January 5, 2022 email entitled "FW:Anovo/AgileThought – Urgent Discussion" is attached as **Exhibit K**.

37.    On January 7, 2022, the parties had a Success Committee Review meeting by telephone, the subject of which was memorialized in a written presentation a copy of which is attached as **Exhibit L**.   In the Executive Summary, under "Lowlights", AgileThought wrote that "Complexity continues to exceed assumptions made during May workshop." *Id.* at 2.  This was detailed in the section entitled "Scope/Complexity Changes Associated to Current Sprint Activities", which more than doubled the dates necessary for the current, discrete phase of the project as specifications were refined.   On the last page, AgileThought states, "The areas below are key component of the overall program that require close attention and progress tracking." *Id.* at 10.  Under "Comments", AgileThought identified that "Training" required a "CO", which is a "change order", Operations Support and Maintenance required a "SOW", which is a "statement of work", and |"UI Refresh" required a "SOW or CO." *Id*.

38.    On the page entitled "Financials of the Engagement", AgileThought detailed $107,630 in unpaid invoices through December 2021.

39.    On January 21, 2022, the parties had a Success Committee Review meeting by telephone, the subject of which was memorialized in a written presentation a copy of which is attached as **Exhibit M**.   Under "Comments", AgileThought identified that "Training" required a "CO", which is a "change order", Operations Support and Maintenance required a "SOW", which is a "statement of work", and |"UI Refresh" required a "SOW or CO." *Id*.

40.    On the page entitled "Financials of the Engagement", AgileThought detailed $109,488 in unpaid invoices through December 2021.

41.    On February 4, 2022, the parties had a Success Committee Review meeting by telephone, the subject of which was memorialized in a written presentation a copy of which is attached as **Exhibit N**.    On the last page, AgileThought states, "The areas below are key component of the overall program that require close attention and progress tracking." *Id.* at 10. Under "Comments", AgileThought identified that "Training" required a "CO", which is a "change order", Operations Support and Maintenance required a "SOW", which is a "statement of work", and |"UI Refresh" required a "SOW or CO." *Id.*

42.    On the page entitled "Financials of the Engagement", AgileThought detailed $109,488 in unpaid invoices through December 2021.

43.    Despite the continued meetings and summary presentations that addressed the issues raised and discussed at the December 14, 2021 meeting between the parties, Anovo did not pay the outstanding invoices or provide the guidance and direction that AgileThought had repeatedly identified as a problem in the relationship.

44.    On February 2, 2022, AgileThought wrote to Anovo and summarized the conversation "from [AgileThought's] perspective" as follows:

1.    We will continue to honor the obligations in the SOW through May 2022
     a.    For work that is above and beyond the initial aligned understanding of the scope AT will invoice that $81/hour up through May for work delivered so far and ongoing
2.    As part of Sprint planning and refinement session for which we align the final scope and body of work to be included in each sprint, we will document and make it clear as to the effort and how this is being categorized
     a.    This will be tracked in each of the CMI reviews so there is full visibility on this for both yourself and Jon
3.    We also have a number of invoices that are past due from last year – I would appreciate it if you can help get these processed

> As said we do want to find a path forward as I feel we are delivering value and making
> progress in terms of the application build out and progress.  That said we need to do this in
> a way that is viable for both Anovo and AgileThought.

Email from Paul Mallabar dated February 2, 2022, a copy of which is attached as **Exhibit O**.

45.    On February 18, 2022, the parties had a Success Committee Review meeting by
telephone, the subject of which was memorialized in a written presentation a copy of which is
attached as **Exhibit P**.    This presentation reiterated that the new "application is dependent on
integration with many 3rd party providers and services." *Id.* at 8.

46.    On the page entitled "Financials of the Engagement", AgileThought detailed
$280,233 in invoices that remained unpaid.

47.    With a mounting receivable, coupled with Anovo's inadequate performance under
the agreement, on April 8, 2022, AgileThought sent Anovo correspondence entitled "Demand for
past due payments," a copy of which is attached as **Exhibit Q**.  That demand sought payment of
$158,658 in unpaid invoices and indicated that AgileThought would terminate the MSA and SOW
# 3 or suspend services if payment was not made by April 22, 2022.

48.    On April 20, 2022, Anovo responded – for the first time – that it disputed the agreed
upon charges under SOW # 3.  It further contended that AgileThought has materially breached the
parties' agreement.  Notably, this correspondence conceded that AgileThought had indicated in its
week of November 15, 2021 communications that the product could not be completed in the time
and for the price that had been contemplated based on the scope Anovo previously agreed-upon.
However, Anovo only raised this as an issue and declared a breach months and months later after
it had not paid its bills.

49.    Meanwhile, AgileThought continued to perform under the agreement.  On April
22, 2022, the parties had a Success Committee Review meeting by telephone, the subject of which

was memorialized in a written presentation a copy of which is attached as **Exhibit R**.   This presentation noted that AgileThought has "been analyzing scope creep as a result of underestimation and new scope" and that it was "consistently seeing between **20-40%** inflation in backlog as we refine stories and uncover more requirements." *Id.* at 8.  The states that "[c]urrent forecast shows go-live **May 30th, 2023**.  Please note multiple factors can and will impact this estimation." *Id.*

50.    On the page entitled "Financials of the Engagement -- $225K Outstanding", AgileThought detailed $225,125 in unpaid invoices since March 2021.

51.    On April 29, 2022, AgileThought responded to Anovo's April 22, 2022 response to the demand and explained:

> Nonetheless, the inability of the parties to meet the estimated date was a direct result of Anovo's constant changes to the agreed upon scope without following the agreed upon change process set out in Section 2.2 of the SOW. Mr. Marketo's communications with Anovo served as notifications to Anovo that due to their continuous changes to the scope, it had become clear that it would be difficult for the parties to meet the estimated completion date.

April 29, 2022 Termination Notice, a copy of which is attached as **Exhibit S**.

52.    At the time of termination, AgileThought had provided services under SOW #3 to Anovo and had issued $22,727.00 monthly invoices to Anovo for months of September, October, November, and December of 2021, and January, February, March, and April of 2022.

53.    At the time of termination, AgileThought had incurred monthly internet cloud services and related expenses of $1,858, which had been billed and remained unpaid the months from March 2021 through January 2022.

54.    AgileThought has also previously and repeatedly requested the payment of fees for additional work that was outside of the scope of SOW #3, so that the sum of these fees for

additional work and the unpaid monthly fees for costs and services, which was invoiced to Anovo totaled $245,994. Copy of unpaid invoices attached as **Exhibit T**.

55.     The invoiced amounts under SOW # 3 reflected an average of about $10.15 per hour of actual work by skilled personnel, which is well under a market rate of $81 per hour.  Thus, the market value of the team of 14 full time employees at 160 work hours per month was equal to $181,440 or $158,713 more than the contracted rate of $22,727 per month.  Over the course of the 11 month term of SOW #3, the total market value of the work provided was therefore $1,745,843 more than the contracted rate.

## COUNT I – BREACH OF CONTRACT

56.     AgileThought restates the allegations of paragraphs 1 through 54 as if fully realleged.

57.     The Services Agreement and SOW # 3 constitute a contract.

58.     Anovo's acts and omissions constitute material breaches of the contract in that it: a) failed to pay for services for which the parties contracted; b) insisted on services that exceeded the scope of contract and refused to pay for those additional services; and c) failed to provide the input, guidance, and direction that it was contractually bound to provide to AgileThought in the performance of its duties.

59.     Anovo's material breaches proximately damaged AgileThought.

60.     AgileThought was damaged in the amount of unpaid invoices for fees and costs and fees and costs for additional work that it undertook at the direction of Anovo or because Anovo failed to provide the input and guidance it was obligated to provide AgileThought under the contract.

## COUNT II – UNJUST ENRICHMENT

61.     AgileThought restates the allegations of paragraphs 1 through 60 as if fully realleged.

62.     Solely to the extent that it is determined that all of AgileThought's claims are not encompassed by a contract, and in the alternative, AgileThought claims that Anovo was unjustly enriched.

63.     AgileThought conferred a benefit on Anovo with a fair market value of $1,745,843, which is the result, in part of Anovo's insistence on services that exceed the scope of services contemplated by the parties at the May 2021 Workshop.

64.     Anovo had knowledge of the benefit being conferred in the form of services.

65.     Anovo accepted the benefit conferred.

66.     The circumstances are such that it would be inequitable for Anovo to retain the benefit of the services without payment at the fair market rate.

## COUNT III: BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

67.     AgileThought restates the allegations of paragraphs 1 through 54, 56-60 as if fully realleged.

68.     The Services Agreement and SOW #3 constituted a contract.

69.     All Florida contracts have an implied covenant of good faith and fair dealing which is intended to protect the reasonable expectations of the contracting parties in light of their express agreement.

70.     Express terms of the contract detailed the Anovo's obligation to cooperate, assist, inform, direct, and otherwise participate as the owner with respect to decisions on the scope of services and issue resolution.  These obligations are set forth in Sections 2.1 (Product Capabilities) and 6 (Conditions for Success), among others.

71.    Anovo also breached its obligation under the agreement to monitor and maintain the scope of the services to ensure that the budget and timing remained constant.    This allowed the project costs to escalate, while it had no intention of making payment.

72.    Contrary to the obligations of the parties' agreement, Anovo continually sought to expand the scope of the services that were being rendered, thereby requiring more effort and investment by AgileThought but had no intention of paying for such additional services.

73.    Further, despite its contractual promise to pay, Anovo failed to pay outstanding invoices and had no intention of making payment, meanwhile urging AgileThought to continue working.

74.    Anovo undertook the obligations and created a reasonable expectation in AgileThought in light of their express agreement.

75.    Anovo breached its implied covenant of good faith and fair dealing, which damaged AgileThought in unpaid fees pursuant to SOW #3 and additional unpaid fees for work outside of the SOW # 3 requested by Anovo.

## COUNT IV: ACCOUNT STATED

76.    AgileThought restates the allegations of paragraphs 1 through  54 as if fully realleged.

77.    The parties had an agreement between them as to the amount owed.

78.    Pursuant to section 7 of SOW #3, the parties agreed that Anovo would pay monthly bills within 30 days of "receipt of each undisputed invoice."

79.    The parties agreed upon the fee, payable monthly.

80.    The parties agreed as to the expenses incurred.

81.    Anovo's conduct was a promise to pay.

82.    Anovo did not timely object or pay invoices for services rendered from September 2021 through April 2022, nor did it pay or timely object for invoices for Microsoft Azure Platform as Service costs from March 2021 through January 2022.

83.    The total of the unpaid account to which a timely objection was not made is $245,994.00.

WHEREFORE, Defendant/Counter-Plaintiff AgileThought, Inc. respectfully requests that the Court:

(a) grant judgment against Plaintiff/Counter-Defendant Anovo Holdings, Inc. in an amount to be proved at trial for breach of contract, unjust enrichment, account stated, and breach of implied warranty for good faith and fair dealing;

(b) award AgileThought pre and post-judgment interest;

(c) award AgileThought its costs and expenses in bringing this action; and

(d) grant AgileThought all such other and further relief which the Court may deem proper under the circumstances.

Respectfully submitted,

**CONTINENTAL PLLC**

*/s/ John Arrastia*
John Arrastia, Esq. (*Pro Hac Vice*)
Angelo M. Castaldi, Esq. (*Pro Hac Vice*)
255 Alhambra Cir, Suite 640
Coral Gables, FL 33134
Tel: 305-677-2707
JArrastia@continentalpllc.com
JSuarez@continentalpllc.com

**EVANS PETREE PC**

/s/ L. Clayton Culpepper, III
L. Clayton Culpepper, III (TN 23583)
cculpepper@evanspetree.com

Jack F. Heflin (TN 34279)
jackheflin@evanspetree.com
1715 Aaron Brenner Dr., Suite 800
Memphis, Tennessee 38120
Telephone: (901) 525-6781

*Counsel for Defendant/Counter-Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on November 11, 2022, I filed the foregoing **DEFENDANT AGILETHOUGHT, INC.'S ANSWER TO PLAINTIFF'S COMPLAINT AND COUNTERCLAIM** with the Clerk of Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record in this action.

s/Clay Culpepper
L. Clayton Culpepper, III

*Counsel for Defendant*